**NOT RECOMMENDED FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-90-HRW

ANTONIO J. HOWARD                                                                                      PETITIONER

VS:                       **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON, Warden                                                                              RESPONDENT

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

Antonio J. Howard, an individual committed to the custody of the Federal Bureau of prisons ("BOP") and currently confined in the BOP's Federal Correctional Institution, in Ashland, Kentucky, has paid the habeas filing fee and submitted a *pro se* petition, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and mandamus relief pursuant to 28 U.S.C. § 1361.

This matter is before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). As Petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## CLAIMS

Petitioner claims that the BOP will not consider him for placement in a Community Corrections Center ("CCC"),[1] for service of the last 10% of his sentence, in violation of the terms of 18 U.S.C. §§ 3621(b) and 3624(c) and the BOP's discretionary authority therein.

## FACTUAL ALLEGATIONS

Petitioner has submitted a self-styled, typewritten petition to which he has attached several documentary exhibits. Record No. 2. The following is a summary or construction of the allegations in these documents.

In 2002, in the United States District Court for the Southern District of Ohio, Howard was sentenced to the 106-month term of incarceration which he is currently serving. An attached print-out showing the BOP's computation of his sentence reveals that his projected release date, via awards of good conduct time, is November 22, 2009.

Petitioner alleges that his counselor, a man named Ash, "and other team members have indicated that my CCC placement referral consideration would be limited to 6 months. I believe this [is] outside of the statutory commands of § 3624(c)." Therefore, in June of 2007, he asked Mr. Ash for a BOP form used to initiate administrative remedy proceedings, so as to resolve with the BOP exactly the length of a CCC stay to which Petitioner is entitled.

However, Howard alleges, Mr. Ash responded that Petitioner's filing for an administrative remedy would be "a waste of time because inmate Steven Thomas . . . has been filing administrative remedies on the same issue unsuccessfully and [Howard's] filing would be futile." Petitioner

---

[1] Also commonly called a "halfway house," both of which are used to assist prisoners' transition back into the community at large.

characterizes this as a refusal to provide him an entry into the administrative process. Therefore, he requests that the Court waive the administrative remedy exhaustion normally required before judicial review of a Section 2241 petition is permitted.

Petitioner then proceeds to the merits of his CCC claim, *i.e.*, that he is entitled to being considered for spending the entire last 10% of his sentence in a CCC. This discussion contains an historical perspective to the BOP's changing interpretations of and policies on enforcing 18 U.S.C. §§ 3621(b) and 3624(c), including a 2002 change in interpretation of the statutes by the Department of Justice, use of the BOP's Program Statement 7310.04 [titled <u>Community Corrections Center (CCC) Utilization and Transfer Procedures</u>], recently promulgated regulations at 28 CFR §570.20-21, and evolving case law.

Howard contends that while the BOP *is not obligated* to award him the CCC for the place of service of the last 10% of his sentence, the BOP *is obligated* to recommend him for that 10% stay. Morever, he believes that his entitlement thereto is so clear that the Court may exercise its 28 U.S.C. § 1361 jurisdiction for granting mandamus relief.

<u>DISCUSSION</u>

The Court begins with a pre-condition to filing for Section 2241 relief, *i.e.*, the exhaustion of administrative remedies. Prisoners who seek relief under 28 U.S.C. §2241 are ordinarily required to pursue administrative remedies – and pursue them to exhaustion – before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir.(Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first exhaust his available administrative remedies before filing a §2241

petition); *United States v. Oglesby*, 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson*, 503 U.S. 329, 335 (1992)).

The administrative remedies for federal prisoners bringing a 28 U.S.C. §2241 petition are set forth in 28 C.F.R. §§542.10-16 (1997). Section 542.13(a) demands that an inmate first informally present his complaint or request to the staff, the prisoner using what is commonly called a BOP form 8 ½. However, if the inmate cannot informally resolve the issue with staff, then he may submit a formal written complaint/appeal (BP-9 form) to the warden. An inmate who is not satisfied with the warden's response may submit an appeal (BP-10) to the appropriate regional director; and an inmate who is not satisfied with the regional director's response may submit an appeal (BP-11) to the BOP's general counsel.

The BOP's response times are not unduly protracted. They are established in 28 C.F.R. §542.18, which provides that responses shall be made by the Warden "within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id*. Only one extension of time is allowed the BOP. Moreover, if the time runs for a response at any level without a response being made, the prisoner may consider the lack of a response a denial at that level and go on to the next level.

Petitioner is correct that the exhaustion requirement may be waived by the District Court on futility grounds. However, resort to administrative remedies is futile only if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139 (D.C. Cir. 1987).

In the case *sub judice*, the Petitioner has the opinion of only his prison "team" that he is not entitled to be considered for spending the entire last 10% of his sentence in a CCC and that he will be considered only for a 6-month maximum. This is hardly strong evidence of the BOP's position on Howard's individual qualifications for a CCC. Petitioner all but admits that the decision on the length of his stay in a CCC may ultimately vary from what he wishes. To waive the administrative process now, with only one conversation with a staff member and without having presented the matter to any BOP superiors in the next 3 levels of the administrative chain simply would not be wise. As it is, with no administrative record, there is no record for the habeas court to review.

In addition to providing a record for the court, the Third Circuit in *Lyons v. United States Marshals*, 840 F.2d 202 (3rd Cir. 1988) has pointed out other benefits which exhaustion yields:

> The exhaustion requirement promotes: (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.

*Id.* at 205. While exhaustion herein would be serving these goals, the delay occasioned by the requirement will not prejudice Howard. Between today and the date on which Howard is currently projected to be released, lie more than 2 years, plenty of time for him to pursue the matter administratively to exhaustion without harm to his cause.

With regard to Petitioner's suggestion that Mr. Ash "refused" to give him a form and so he simply cannot pursue the BOP administrative remedies, his own allegations and exhibits do not support such a claim. Even if Mr. Ash did discourage him and tell him that it would be a waste of time and would not give him the right form, the evidence herein is that Howard thereafter refused to take "no," if there was one, as an answer. He was evidently able to obtain at least one BOP form

from someone else shortly after his conversation with Ash, as he has provided the Court with a copy of an Inmate Request to Staff form which he filled out, addressed to Mr. Ash, on June 26, 2007. On it, he reminds the counselor of their earlier conversation and then writes the following:

> . . . I need to exhaust my administrative remedies before I can seek judicial review. If you are allowing me or telling me that my administrative remedies will not make a difference, then please tell me so then I will be allowed to proceed directly in court for a judicial review. . . .

Attachment dated by the Petitioner on June 26, 2007.

The form also reveals that Mr. Ash did *not*, however, respond by "telling [him] that [his] administrative remedies will not make a difference." To the contrary, on July 2, 2007, Ash wrote, "File an 8 ½.." Petitioner did not do so. Rather, one month later, he filed this action instead.

## CONCLUSION

For the foregoing reasons, the Court concludes that as to the amount of time the Petitioner will be considered for spending in a CCC, he has not exhausted the BOP's administrative remedies, his pursuit of the matter administratively is not futile, and his pursuit of the matter administratively has not been barred. Therefore, his petition for habeas relief will be dismissed without prejudice to his bringing another proceeding after proper exhaustion. Howard's request for mandamus relief is also premature and not well taken. *See Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996).

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)   Antonio J. Howard's petition for writ of habeas corpus and mandamus relief is **DENIED**.

(2)   This action will be **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This August 21, 2007.

